UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ROOSEVELT W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 19-cv-6827-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Roosevelt W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 17).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 13. Plaintiff also filed a reply brief. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 1) is **GRANTED**.

## <u>BACKGROUND</u>

In December 2006, Plaintiff protectively filed applications for DIB and SSI, alleging disability since December 7, 2005, due to diabetes mellitus and related toe amputations and foot ulcers. Transcript ("Tr.") 325, 519-25. In a decision dated December 14, 2011, Plaintiff was found disabled beginning on December 31, 2008. A few years later, the agency conducted a continuing

disability review, and on November 5, 2015, it was determined that Plaintiff was no longer disabled as of November 1, 2015. Tr. 337-52. A state agency disability hearing officer upheld this determination after a disability hearing on August 24, 2016 (Tr. 365-92), after which Plaintiff requested an administrative hearing (Tr. 393).

On March 22, 2018, and August 30, 2018, Administrative Law Judge Barbara J. Zanotti (the "ALJ") conducted hearings in Tampa, Florida. Tr. 241-83. Plaintiff appeared at the first hearing without a representative, and the hearing was postponed to allow Plaintiff to obtain representation. Tr. 274-80.  At the second hearing, Plaintiff informed the ALJ that he had not been successful in obtaining representation, and therefore, he appeared and testified without the assistance of an attorney or other representative. Tr. 12, 243-44. Cynthia H. Stephens, an impartial vocational expert ("VE"), also appeared and testified at the second hearing. Tr. 12.

The ALJ issued an unfavorable decision on October 17, 2018, finding that Plaintiff was not disabled. Tr. 12-24. On September 12, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's October 17, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C.  § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Continuing Disability Review Standard

Once disability is established, the agency must conduct periodic continuing disability reviews to ensure that individuals are entitled to the benefits they are receiving. *See* 42 U.S.C. § 421(i); 20 C.F.R. §§ 404.1589, 416.989. Termination of benefits may occur when there is substantial evidence to show that a "medical improvement" restores the recipient's ability to work. *Deronde v. Astrue*, 2013 WL 869489, at *2 (N.D.N.Y. Feb.11, 2013) (citing *inter alia* 20 C.F.R. § 404.1594; *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2003)). Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [he or she was] disabled or continued to be disabled." *Id.* (citing *inter alia* 20 C.F.R. § 404.1594(b)(1)). The Commissioner must compare the current medical severity of plaintiff's impairment to the severity of that impairment at the time of the most recent favorable decision. *Douglass v. Astrue*, 496 Fed. App'x 154, 155 (2d Cir.2012) (citing *Veino*, 312 F.3d at 586–87).

To determine whether a claimant's disability has ended, the Commissioner has developed a multi-step analysis, For Title II claims, the continuing disability review process involves eight steps. At step one, the ALJ must determine if the claimant is engaging in substantial gainful activity. If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled (20 CFR 404.1594(f)(1)).

At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed

in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). If the claimant does, his disability continues (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

At step three, the ALJ must determine whether medical improvement has occurred (20 CFR 404.1594(f)(3) and 416.994(b)(5)(ii)). Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings (20 CFR 404.1594(b)(l) and 416.994(b)(l)(i)).  If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step

At step four, the ALJ must determine whether medical improvement is related to the ability to work (20 CFR 404.1594(f)(4) and 416.994(b)(5)(iii)). Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities (20 CFR 404.1594(b)(3) and 416.994(b)(1)(iii)).  If it does, the analysis proceeds to the sixth step.

At step five, the ALJ must determine if an exception to medical improvement applies (20 CFR 404.1594(f)(5) and 416.994(b)(5)(iv)). There are two groups of exceptions (20 CFR 404.1594(d) and (e) and 416.994(b)(3) and (b)(4)). If one of the first group exceptions applies, the analysis proceeds to the next step.  If one of the second group exceptions applies, the claimant's disability ends. If none apply, the claimant's disability continues.

At step six, the ALJ must determine whether all the claimant's current impairments in combination are severe (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  If they do, the analysis proceeds to the next step.

At step seven, the ALJ must assess the claimant's residual functional capacity ("RFC") based on the current impairments and determine if he can perform past relevant work (20 CFR

404.1594(f)(7) and 416.994(b)(5)(vi)). If the claimant has the capacity to perform past relevant work, his disability has ended.  If not, the analysis proceeds to the last step.

At the last step, the ALJ must determine whether other work exists that the claimant can perform, given his RFC and considering his age, education, and past work experience (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)). If the claimant can perform other work, he is no longer disabled.  If the claimant cannot perform other work, his disability continues.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education, and work experience.

The continuing disability review process under Title XVI involves seven steps, which correlate to steps two through eight of the Title II analysis. *See* 20 C.F.R. § 416.994(b)(5)(i)-(vii). The performance of substantial gainful activity (step one of the Title II analysis) is not a factor used to determine if the individual's disability continues under Title XVI. *See* 20 C.F.R. § 416.994(b)(5).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her October 17, 2018 decision:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated December 14, 2011. This is known as the "comparison point decision" or CPD;

2. At the time of the CPD, the claimant had the following medically determinable impairment: diabetes mellitus. This impairment was found to result in the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he required the use of a cane to walk on uneven ground; he was unable to work with small objects or read small print; and he was only able to handle or finger up to fifty percent of the workday;

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(1)(1));

4. The medical evidence establishes that, since November 1, 2015, the claimant has had the following medically determinable impairments: diabetes mellitus w/ renal manifestations; peripheral circulatory disorders; peripheral neuropathy; lower limb amputation status post right trans-metatarsal amputation; right eye blurred vision from diabetes mellitus; disorders of the cervical spine; obesity; gastroesophageal reflux disease ("GERD"); chronic kidney disease; hypertension;  hyperlipidemia; hyperkeratosis; onychomycosis of the  toenails; tinea pedis;  pronated foot; major depressive disorder; and substance use disorder. These are the claimant's current impairments;

5. Since November 1, 2015, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926);

6. Medical improvement occurred on November 1, 2015 (20 CFR 404.1594(b)(l) and 416.994(b)(1)(i));

7. Since November 1, 2015, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(a)[1];

8. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii) and 416.994(b)(2)(iv)(B));

9. Since November 1, 2015, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(1)(6) and 416.994(b)(5)(v));

10. Since November 1, 2015, based on the current impairments, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[2] except he is limited to no more than occasional postural activities, though he can never climb ladders, ropes, and/or scaffolds; he is limited to no more than frequent bilateral handling and/or fingering; he is limited to no more than occasional exposure to extreme cold, vibration, and workplace hazards such as unprotected heights and moving machinery;  he needs a cane for ambulation; he is limited to work that is indoors in lighted

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[2] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

conditions such as office lights or brighter; he can occasionally perform job tasks that require fine near vision, for example, threading a needle; he is not able to work with objects under the size of a 2x2 square. He can use a computer to enlarge font, and if the font can be manipulated in size with the computer, then reading may be performed constantly; however, if the font cannot be manipulated in size, and the font is less than newspaper print in size, then he is limited to occasional reading;

11. Since November 1, 2015, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965);

12. On November 1, 2015, the claimant was a younger individual age 18-44 (20 CFR 404.1563 and 416.963);

13. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

14. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968);

15. Since November 1, 2015, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966);

16. The claimant's disability ended on November 1, 2015, and the claimant has not become disabled again since that date (20 CFR 404.1594(1)(8) and 416.994(b)(5)(vii)).

Tr. 12-24.

Accordingly, the ALJ determined that the claimant's disability under sections 216(i) and 223(f) of the Social Security Act ended on November 1, 2015, and the claimant has not become disabled again since that date. Tr. 24. The ALJ also determined that the claimant's disability under section 1614(a)(3)(A) of the Social Security Act ended on November 1, 2015, and the claimant has not become disabled again since that date. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that because the record contained no treating or examining source opinions, the ALJ should have developed the record to obtain a medical opinion of his functional ability. *See* ECF No. 9-1 at 15-17. Second, Plaintiff argues that

the ALJ impermissibly relied on the opinion of non-examining state agency psychological consultant Michelle Butler, Pys.D. ("Dr. Butler"). *See id*. at 17-19. Accordingly, argues Plaintiff, the ALJ's disability determination was not supported by substantial evidence. *Id*. at 15-19.

The Commissioner argues in response that the ALJ properly obtained Plaintiff's medical records and had no further obligation to seek opinion evidence. *See* ECF No. 13-1 at 15-20. Further, argues the Commissioner, the ALJ properly considered the medical opinions of the non-examining sources and sufficiently explained her reasons for the weights assigned to the various opinions. *See id*. Therefore, argues the Commissioner, substantial evidence supports the ALJ's decision. *Id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the record contained sufficient evidence supporting the ALJ's determination. Furthermore, the ALJ carefully considered the evidence of record, including the non-examining state agency medical source opinions in assessing Plaintiff's functional abilities, and the ALJ's RFC determination was supported by substantial evidence. Plaintiff had a history of uncontrolled diabetes with amputation of all five toes on his right foot in December 2009 (Tr. 333, 375) and non-healing ulcers on his left foot between March 2010 and April 2011 (Tr. 333, 375). Although Plaintiff continues to have a number of diabetes-related problems and other medical problems, the ALJ properly determined that since November

1, 2015, the impairment present at the time of the CPD had decreased in medical severity, and based on his current impairments, Plaintiff retains the capacity to perform sedentary work with the limitations noted in the RFC.

In May 2013, Plaintiff established primary care with Tampa Family Health Centers ("Tampa Family Health"). Tr. 778. He reported a history of high blood pressure and uncontrolled diabetes resulting in the amputation of all five toes on his right foot. *Id*. He denied any current musculoskeletal or neurological symptoms. Tr. 779. Upon examination, Plaintiff had no edema and normal gait, stance, and balance. Tr. 780. Plaintiff received medication refills and was advised to exercise regularly. *Id*. Later that month, Plaintiff denied any weakness, tingling, or numbness (Tr. 774), and a physical examination showed normal sensation in the feet (Tr. 776).

In June 2013, Plaintiff's blood sugar level was above 500 (Tr. 771), and he admitted that he had not been adhering to a diabetic diet or insulin therapy (Tr. 768). He complained of feet numbness without weakness, but he had no ulcers or sores on his feet, no edema, and a normal gait and stance. Tr. 768, 771. Plaintiff continued to have high blood sugar levels in July, August, and November 2013. Tr. 763. In August 2013, his Hemoglobin A1C[3] was 11.9, an increase from 10.5 in May 2013. Tr. 758. Plaintiff reported feeling "ok." *Id*. Physical examinations showed no edema, normal gait and stance, and no sensory abnormalities. Tr. 755, 761, 766.

Plaintiff continued receiving treatment from Tampa Family Health, including diabetes and blood pressure medications, through February 2015. Tr. 707-45. In January 2014, Plaintiff reported no problems with activities of daily living. Tr. 747. Plaintiff stated his diet was high in sugar, fat, and calories because his live-in girlfriend "does not provide him with diabetic meals." Tr. 745.

---

[3] The hemoglobin test A1C ("HbA1C" or simply "A1C") is a blood test that measures average blood sugar levels over the past three months. The A1C goal for most people with diabetes is 7% or less, which corresponds to an estimated average glucose ("eAG") of 154. An A1C of 10% corresponds to an eAG of 240. *See* CDC website, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html# (last visited July 20, 2021).

The following month, Plaintiff again stated his diet was "bad," and he wanted to improve, but his fiancée did the grocery shopping and cooking. Tr. 739. He reported his blood sugars are in the 190's in the morning and in the 250's at night. *Id.*

In March 2014, Plaintiff reported relationship problems, as he was recently married, and sought mental health treatment for anger management issues. Tr. 733, 782-83. In July 2014, Plaintiff said he was not taking his medications every day or following a diabetic diet. Tr. 725. He said he felt stressed out and depressed about his marriage and living situation. *Id.* Three months later, in October 2014, Plaintiff reported some tingling in his legs, but no lesions on his feet. Tr. 719. In November 2014, Plaintiff complained of gastrointestinal symptoms. Tr. 713. In February 2015, Plaintiff said he felt weak and was not compliant with a diabetic diet, an exercise routine, or his medications. Tr. 707.

Throughout this period, Plaintiff denied vision problems, musculoskeletal symptoms, and neurological symptoms. Tr. 709, 715, 721, 727, 735, 741, 747. He admitted that he used marijuana daily. Tr. 708, 714, 720, 727, 783. Examinations continually showed euthymic mood, normal affect, no edema, and normal sensation, balance, gait, and stance. Tr. 710, 716, 722, 728-29, 736, 742, 748. Plaintiff's blood sugar and A1C levels remained high. Tr. 711, 723, 729, 737, 742, 748. He was repeatedly counseled on proper diabetic diet. Tr. 712, 717, 724, 730-31, 738, 743, 749.

In March 2015, Plaintiff sought mental health treatment due to marital conflicts and difficulty controlling his anger. Tr. 848. He stated he used marijuana frequently and reported no problem attending to activities of daily living. Tr. 852. He also stated that he moved from New York to Florida a few years before to be close to his father who struggled with health issues. Tr. 854. A mental status examination showed good concentration and attention. Tr. 851. Thereafter, Plaintiff attended four sessions of individual therapy and six sessions of anger management group

therapy. Tr. 818-34. However, he missed seven therapy appointments since March 2015, did not respond to attempts to reschedule missed appointments, and did not return after September 2015. Tr. 813.

In June 2015, Plaintiff established care at Tampa SunMed Primary Care ("Tampa SunMed"). Tr. 786. He complained of abdominal discomfort and "gastritis pain." Tr. 786. He said he smoked marijuana daily and exercised occasionally. Tr. 787. Plaintiff denied any joint stiffness, muscle aches, foot pain, gait abnormality, or tingling/numbness. Tr. 786-87. A physical examination was normal other than decreased sensation in the legs. Tr. 786.

On October 1, 2015, state agency medical consultant Loc Kim Le, M.D. ("Dr. Le"), reviewed the record and opined that Plaintiff was capable of work activities at a light exertional level. Tr. 320-23, 332-35. Dr. Le opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for a total of six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Tr. 320. Dr. Le stated that Plaintiff showed medical improvement with no current evidence of foot ulcers since 2011 and noted that his assessment accounted for pain associated with diabetic neuropathy. Tr. 320.

On October 12, 2015, Plaintiff visited an eye doctor with complaints of difficulty seeing small print. Tr. 811. He said he spent 85% of the day outside, enjoyed reading, and spent eight hours a day in front of an electronic device. Tr. 811.

On November 5, 2015, psychological consultant Dr. Butler reviewed the record and opined that Plaintiff's mental impairments were not severe. Tr. 318-19, 330-31. Dr. Butler also opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Tr. 318.

Plaintiff returned to Tampa SunMed in November 2015 for an annual examination. Tr. 866. He said he was doing well with his current treatment although he had not been eating a proper diet. Tr. 866. He denied any joint stiffness, muscle aches, foot pain, gait abnormality, or tingling/numbness. Tr. 868-69. A physical examination showed normal motor strength and intact sensation in the arms and legs. Tr. 869. Plaintiff received education regarding diabetes diet and proper use of medications. Tr. 862. The following month, in December 2015, Plaintiff said he was doing well with no complaints. Tr. 858. He denied any joint stiffness, muscle aches, foot pain, gait abnormality, or tingling/numbness. Tr. 860-61. A physical examination showed normal motor strength and intact sensation in the arms and legs. Tr. 858. Plaintiff was again advised to follow a diabetic diet and exercise. Tr. 860.

Plaintiff was incarcerated from February 2016 to May 2016 for violation of his probation due to marijuana possession. Tr. 374. Plaintiff worked six hours a day as a dishwasher while incarcerated. Tr. 374.

On March 3, 2016, state agency medical consultant Janet Gibson, D.O. ("Dr. Gibson"), reviewed the record and opined that Plaintiff's conditions had improved since 2011, and he could sustain sedentary work. Tr. 876-83. The report indicates that Plaintiff had failed to attend two scheduled consultative examinations. Tr. 878. Dr. Gibson noted that Plaintiff's foot ulcers had healed, and he no longer used a cane. Tr. 878. He had diabetic neuropathy, but he repeatedly denied leg pain, intermittent claudication, falls, pain in the ball of his feet, leg cramps, and sole or heel pain. *Id*. Plaintiff displayed no gait abnormality and he denied back pain, knee pain, shoulder pain, or swollen joints. *Id*. Dr. Gibson also noted that, in contrast to previous medical records, Plaintiff's current examinations did not mention any contractures in his hands. Tr. 878, 883.

Dr. Gibson opined that Plaintiff could frequently lift and carry up to 10 pounds, sit for a total of about six hours in an eight-hour workday, and stand or walk for a total of at least two hours in an eight-hour workday. Tr. 877. He could frequently stoop, kneel, crouch, and crawl; occasionally use foot controls, balance, and climb ramps and stairs; and never climb ladders, ropes, or scaffolds. Tr. 878. Dr. Gibson further opined that Plaintiff had no manipulative or visual limitations, but he should avoid hazards such as machinery and height. Tr. 879-80.

On March 6, 2016, state agency medical consultant Alan Harris, Ph.D. ("Dr. Harris"), reviewed the record and opined that Plaintiff was able to meet the mental demands of a simple vocation on a sustained basis with limited social interaction. Tr. 886. Dr. Harris explained that Plaintiff appeared capable of performing simple, repetitive tasks with good understanding and persistence. Tr. 886. He opined that Plaintiff should be capable of attention and concentration for at least two hours at a time and required reasonable, but not frequent, breaks throughout the day. *Id*. Dr. Harris indicated that Plaintiff should be able to relate appropriately on a casual, limited basis with the general public, but he may have difficulty coping with rapid changes in the performance environment, and therefore, may prefer repetitive tasks that do not require alteration in routine. *Id*.

Plaintiff returned to Tampa Family Health in August 2016, 18 months after his last appointment there. Tr. 1139. He had not been following a diabetic diet and had developed an infection in his right leg while incarcerated. Tr. 1139. He reported feeling tired with little energy six to seven days per week. Tr. 1141. He denied any decrease in concentration or any musculoskeletal or neurological complaints, and he had no problems with activities of daily living. *Id*. Upon examination, Plaintiff had normal balance, gait, and stance. Tr. 1142. He had an infection in his right leg with warmth, swelling, and hyperpigmentation. Tr. 1142. A depression screening

showed mild to moderate symptoms, but it was determined that no treatment was warranted. Tr. 1143. Plaintiff received medication for cellulitis. Tr. 1144.

On August 30, 2016, disability hearing officer D. Smith ("Mr. Smith") found that Plaintiff was no longer disabled. Tr. 375-77. Mr. Smith noted that Plaintiff said he felt he could work and was working part time as a dishwasher. Tr. 375. Mr. Smith also noted that medical evidence after the December 2011 decision showed that Plaintiff did not require a cane and had not required hospital or emergency room treatment. Tr. 376. He also noted that Plaintiff had completed an anger management course, but he was not currently receiving any mental health, psychological or psychiatric treatment, or taking any medications for mental health. Tr. 376.

In December 2016 and January 2017, Plaintiff told his primary care provider at Tampa Family Health that he was not taking his blood pressure medication. Tr. 1117, 1128. He denied musculoskeletal or neurological symptoms (Tr. 1119, 1128, 1130) and physical examination showed pitting edema, decreased sensation in both feet, and no ulcer (Tr. 1121, 1132).

Plaintiff saw a podiatrist for diabetic foot care in January 2017. Tr. 1122. He complained of dry skin and thickened toenails. *Id*. Upon examination, Plaintiff had edema and decreased sensation in both feet, normal motor strength, and an antalgic gait. Tr. 1125. In May 2017, Plaintiff saw his podiatrist with a sore on his left heel. Tr. 1112. He denied musculoskeletal or neurological symptoms. Tr. 1114. A physical examination showed a hyperkeratotic lesion on Plaintiff's right heel with no open ulcers on either foot. Tr. 1115. Plaintiff had decreased sensation in both feet, normal motor strength, and an antalgic gait. *Id*.

Two months later, in July 2017, Plaintiff told his primary care provider at Tampa Family Health that he was not taking his blood pressure or diabetes medication as prescribed. Tr. 1106. He complained of neck pain and worsening vision, but he denied any tingling or numbness of the

14

limbs. *Id*. A physical examination showed a neck muscle spasm and no ulcers on his feet or legs. Tr. 1109.

In September 2017, Plaintiff was involved in an automobile accident. Tr. 906-64. At the scene of the accident, Plaintiff had elevated blood sugar levels and said he had not taken any insulin in three to four days. Tr. 906. He also complained of bilateral hand and elbow pain, as well as right side neck pain. Tr. 906-07. He said he was homeless and smoked marijuana daily. Tr. 916. He was transported to the emergency room and received five days of inpatient treatment to stabilize his blood sugar levels and blood pressure. Tr. 906-64.

Plaintiff visited Tampa Family Health for medication refills in October 2017, February 2018, April 2018, and May 2018. Tr. 1088, 1156, 1159, 1163. He had no new complaints and admitted to noncompliance with a diabetic diet. Tr. 1159. Physical examinations showed no ulcers, intact sensation, and normal gait, stance, and motor strength. Tr. 1090, 1166-67, 1157-58, 1161.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047

(N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

As noted above, Plaintiff alleges that the ALJ's determination that Plaintiff experienced medical improvement and was no longer disabled beginning on November 1, 2015 is not supported

by substantial evidence. *See* ECF No. 9-1 at 15-19. Plaintiff first argues that, in light of his *pro se* status, the ALJ should have developed the record further by obtaining an opinion on Plaintiff's mental and physical functional abilities from a consultative examiner or treating source. *See id*. While an ALJ has a general duty to develop the record in light of the essentially non-adversarial nature of a benefits proceeding, *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009), an ALJ's duty to develop the record is not limitless. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x at 34. Most basically, an ALJ need not further develop the record "when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *See Janes v. Berryhill*, 710 F.App'x 33, 34 (2d Cir. Jan. 30, 2018) (summary order (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996); *see also Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. Jan. 8, 2015) (summary order) (although an ALJ has a duty to develop the record, where there are no obvious gaps and the ALJ possesses a complete medical history, he is under no obligation to seek a treating-source opinion (citations omitted)).

In addition, although the ALJ has a duty to develop the record, ultimately it is Plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (The claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps). Although the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a). In adhering to this responsibility, the claimant must "inform [the Administration] about or submit all evidence known to him that relates to whether or not he is blind or disabled." *Id*.; *see also McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir.

2014) (claimant bears both the general burden of proving disability within the meaning of the Act and the burden of proof at the first four steps); *Burgess*, 537 F.3d at 128.

Plaintiff appears to downplay the ALJ's efforts to obtain records while emphasizing Plaintiff's *pro se* status. *See* ECF No. 9-1 at 16-19. However, the ALJ explained Plaintiff's right to have representation and postponed the first hearing to allow Plaintiff time to obtain representation. Tr. 274-80.  At the second hearing, Plaintiff informed the ALJ that he had not been successful in obtaining representation. Tr. 244. The ALJ also inquired about Plaintiff's treatment providers at the first hearing, and in accordance with 20 C.F.R. §§ 404.1512 and 416.912, properly obtained Plaintiff's medical records. Tr. 277-82, 902-1179. The ALJ's actions complied with the regulations which specify that the agency will "make every reasonable effort to help you get medical evidence from your own medical sources." 20 C.F.R. §§ 404.1512(b) and 416.912(b). Although this evidence did not contain a treating source opinion regarding Plaintiff's functioning, the ALJ had no obligation to obtain such opinion evidence. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017) (a medical source statement or formal medical opinion was not necessarily required where the record contains sufficient evidence from which an ALJ can assess the RFC).

Here, the record was sufficient to support the RFC assessment. The ALJ had medical opinions from Drs. Le, Butler, Gibson, and Harris, as well as a plethora of treatment notes from Plaintiff's physicians. Furthermore, Plaintiff failed to attend two consultative examinations arranged by the agency. Tr. 622, 878. *See Mallon v. Comm'r of Soc. Sec.*, No. 18-CV-0712MWP, 2020 WL 263654, at *1 (W.D.N.Y., January 17, 2020 (citing *Kratochvil v. Comm'r of Soc. Sec.*, No. 1:06-CV-1535, 2009 WL 1405226 at *5 (N.D.N.Y., May 18, 2009) (finding that "[h]aving failed without excuse or explanation to attend the consultative examinations, Mallon 'cannot now

prevail based upon a challenge to the adequacy of th[e] record.'"); *Rosario v. Colvin*, No. 13-1627, 2017 WL 1314215, at \*25 (S.D.N.Y. Feb. 7, 2017) (upholding consideration of plaintiff's repeated failure to attend scheduled consultative examinations in evaluating allegations), *report & recommendation adopted*, 2017 WL 1284900 (Apr. 5, 2017). Accordingly, the ALJ properly obtained Plaintiff's medical records and had no further obligation to seek additional opinion evidence. Plaintiff's attempts to argue otherwise are meritless, and the Court finds no error.

Contrary to Plaintiff's second argument (*see* ECF No. 9-1 at 17-19), the ALJ also properly considered and weighed the opinions of the non-examining state agency medical sources. Tr. 18-22. Consistent with 20 C.F.R. §§ 404.1527(b) and 416.927(b), the ALJ considered the non-examining source opinions along with the other evidence of record. *Id*. ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). With respect to Plaintiff's physical impairments and limitations, the ALJ gave great weight to the opinions of state agency medical consultant Dr. Le, who opined that as of November 2015, Plaintiff was capable of performing light exertional work. Tr. 17, 320-23, 332-35. The ALJ also gave some weight to the opinions of disability hearing officer Mr. Smith and state agency medical consultant Dr. Gibson, who indicated that Plaintiff was capable of work activities at the less than sedentary exertional level with additional postural and environmental limitations. Tr. 19, 375-77, 876-83.

In assessing Plaintiff's mental impairments, the ALJ gave great weight to the opinion of state agency psychological consultant Dr. Butler, who opined that Plaintiff had no more than mild mental limitations. Tr. 16, 318-19, 330-31. The ALJ also considered and gave little weight to the opinion of state agency psychological consultant Dr. Harris, who opined that Plaintiff had mild to moderate mental limitations. Tr. 16, 886. Plaintiff takes issue with the weight given to Dr. Butler's

opinion because she did not review the medical evidence through the hearing date, including the 2015 mental health treatment records. *See* ECF No. 9-1 at 18-19.

Although Dr. Butler's opinion was earlier in time, the ALJ found her assessment of mild mental limitations consistent with the medical record as a whole. Tr. 16, 318-19, 330-31. Furthermore, the ALJ properly considered the evidence received after Dr. Butler's opinion and specifically acknowledged that mental health treatment notes from March through September of 2015 indicated that Plaintiff completed an anger management course. Tr. 16, 17, 813-51. The ALJ considered that mental status examinations were unremarkable with the exception of an irritable mood/affect. Tr. 818-34, 851. Plaintiff otherwise appeared attentive and oriented with normal thought content. Tr. 818-34, 851. The ALJ noted that Plaintiff discontinued mental health treatment in September 2015, and there was no indication in the record that Plaintiff sought any mental health treatment since that time or took any medications for depression. Tr. 16, 17, 813. Nor did the record indicate any emergency care or psychiatric hospitalization after Dr. Butler's opinion. Tr. 16.

Based on the foregoing, the evidence received after Dr. Butler's opinion did not raise doubts as to their reliability, and the ALJ properly found that the record as a whole, including subsequent medical records, was consistent with Dr. Butler's opinion of mild rather than moderate mental limitations. Tr. 19. *See Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016) (finding that there is no "unqualified rule that a medical opinion is superseded by additional material in the record," especially where the additional evidence does not raise doubts as to the reliability of the opinion at issue); *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6-7 (W.D.N.Y. May 12, 2017) (finding that a medical opinion issued two years prior to the ALJ's decision was not stale where there was no evidence that the claimant's condition significantly

deteriorated after the opinion was issued, and the opinion was consistent with the record as a whole)).

Plaintiff appears to argue that the ALJ needed a medical opinion from a treating or examining source in order to assess his limitations. *See* ECF No. 9-1 at 18. However, the underlying premise of Plaintiff's argument—that an ALJ must rely upon a medical opinion to formulate the RFC—is incorrect. It was not error for the ALJ to reach an RFC finding that did not coincide with a medical opinion. As noted above, determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin*, 2015 WL 7749318, at *3; *see also Tankisi*, 521 F. App'x at 34 (a medical source statement or formal opinion is not required when "the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC]."); *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe*, 676 F. App'x at 8-9 (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning); *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (summary order) (affirming where ALJ relied on variety of evidence including claimant's testimony and doctor's letter vaguely asserting severe limitations but noting improvement).

Furthermore, contrary to Plaintiff's assertion, an ALJ may consider and give weight to non-examining state agency medical consultants. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). Non-examining state agency consultants are highly qualified physicians who are experts in the

evaluation of the medical issues in disability claims and the opinions of non-examining physicians can constitute substantial evidence when, as here, they are consistent with other medical evidence of record. *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995); *see* 20 C.F.R. §§ 404.1527(e), 416.927(e) (". . . our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). In accordance with the regulations and case law, the ALJ properly considered the non-examining state agency medical source opinions in assessing Plaintiff's functional abilities.

While Plaintiff may disagree with the ALJ's RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision.). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here has failed to meet this burden.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the medical opinion evidence and Plaintiff's treatment reports, and his findings are supported by substantial evidence. In summary, the evidence is remarkably clear

that Plaintiff's condition had improved despite the fact that he continually failed to take care of his health and follow medical advice regarding medication, diet, and exercise.  Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE